**United States District Court for the District of Maryland**

| | |
|---|---|
| Regina Moore-Davis,<br>9806 Ushers Place<br>Waldorf, M.D. 20601 | )<br>)<br>) |
| | ) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| | ) |
| U.S. Department of the Navy<br>2000 Navy Pentagon<br>Washington, D.C. 20350 | )<br>)<br>)<br>) |
| Kenneth Braithwaite, in his official<br>capacity as Secretary of the Navy,<br>General Counsel of the Navy<br>Naval Litigation Office<br>720 Kennon St., SE, Room 233<br>Washington Navy Yard, D.C. 20374-5013<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) |
| | ) |
| Serve: | )<br>) |
| | ) |
| U.S. Attorney General<br>Department of Justice<br>950 Pennsylvania Ave., NW<br>Washington, DC 20530 | )<br>)<br>)<br>)<br>) |

Civil Action No.   8:20-CV-2023

**COMPLAINT with JURY DEMAND**
**Equal Pay Act (29 U.S.C. § 206(d)) / Title VII Discrimination (42 U.S.C. § 2000e et seq.)**

Plaintiff Regina Moore-Davis, by and through undersigned counsel, brings this action against the Defendant United States Navy and Kenneth Braithwaite, in his official capacity as Acting Secretary of the United States Department of the Navy, and hereby alleges:

**Jurisdiction and Venue**

1.      This Court has jurisdiction pursuant to 28 U.S.C. §1346 as this matter is an action against an agency of the United States, and 28 U.S.C. §1331 as it arises under the laws of the United States,

particularly the Equal Pay Act (hereinafter, the "EPA"), 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), 42 U.S.C. § 2000e.

2. Venue is proper pursuant to 28 U.S.C. §1402(b) because this is the judicial district in which the plaintiff resides.

## Parties

3. Plaintiff Regina Moore-Davis (hereinafter "Ms. Moore-Davis" or "Plaintiff") is an individual who resides in Waldorf, Maryland. She is a citizen of Maryland and the United States of America.

4. Ms. Moore-Davis is an African American and a single mother.

5. At all relevant times, Ms. Moore-Davis was an employee, as defined by the EPA and Title VII, of Defendant United States Department of the Navy (hereinafter, "Agency" or "Defendant") at its Washington Navy Yard location within the District of Columbia.

6. Defendant Kenneth Braithwaite is sued in his official capacity as Secretary of the Navy.

7. Defendant U.S. Department of the Navy is a federal government agency and an employer within the definition of both the EPA and Title VII. The claims alleged herein arise from the Agency's failure to pay Ms. Moore-Davis equal pay for equal work in violation of the Equal Pay Act, 29 U.S.C. § 206(d); further, the Agency engaged in pay-based gender discrimination in violation of Title VII, 42 U.S.C. § 2000e.  Ms. Moore-Davis further suffered from discrimination, harassment, and an ongoing hostile work environment on the basis of sex, race, and/or retaliation, including a negative performance review, discriminatory treatment in regard to telework, and discipline, in violation of Title VII.

## Exhaustion of Administrative Remedies

8.     Plaintiff has exhausted her administrative remedies.   Plaintiff initiated her first EEO informal complaint process on February 23, 2017.

9.     Ms. Moore-Davis's initial claims were accepted and processed by the Department of Defense's Investigations and Resolutions Directorate as case DON 17-00024-01451.

10.    By letter dated May 24, 2017, the Agency notified Ms. Moore-Davis of her right to file a formal complaint.

11.    On May 24, 2017, and thereafter, Ms. Moore-Davis submitted several additional claims.

12.    Plaintiff timely filed her First Formal Complaint, including her earlier amendments, on June 5, 2017.

13.    On June 21, 2017, the Agency acknowledged the Ms. Moore-Davis's First Formal Complaint and accepted all claims for investigation.

14.    During the time Agency was processing Ms. Moore-Davis's First Formal Complaint, Ms. Moore-Davis submitted amendments to the complaint, all of which were accepted by the Agency and included in the investigation.

15.    The investigation occurred between March 5, 2018, and May 17, 2018.

16.    Ms. Moore-Davis requested an EEOC hearing, which was assigned EEOC Case Number 570-2019-00278X.

17.    On March 31, 2020, the EEOC Administrative Judge granted Agency's Motion to Dismiss and entered judgment in favor of the Agency.

18.    On April 10, 2020, the Agency issued its Final Order dismissing Ms. Moore-Davis's First Formal Complaint.

19.    This Complaint is timely.

20.     All other actions and omissions by the Agency, from January 9, 2017 to the present time, were within the scope of and related to the EEOC investigation of Ms. Moore-Davis's First Formal Complaint, and/or constitute retaliation, for which there is no separate requirement of exhaustion of administrative remedies.

## Statement of Facts

### Background

21.     Ms. Moore-Davis began working for the Navy as an engineer in 2002.

22.     Ms. Moore-Davis had positive performance reviews of "Acceptable" or better from at least 2003 through 2016.

23.     On or around March 31, 2015, Ms. Moore-Davis was selected as eligible for a GS-13 General Engineer position with the Naval Sea Systems Command (NAVSEA) in the Submarine System Engineering Division, known as SEA 05U; her name was therefore placed on a hiring certificate of eligible candidates.

24.     Ms. Moore-Davis's resume, along with other certified General Engineers' resumes, were forwarded to the NAVSEA Warfare Systems Integration Certification and Readiness Division, known as SEA 05H4 on or around April 24, 2015.

25.     Ms. Shelly Yost, after reviewing the SEA 05U General Engineer resumes, noticed that the certification was for GS-801-13 positions.

26.     The Certification Lead positions in SEA 05H4 Ms. Yost was looking to fill were GS-801-13/14.

27.     Instead of seeking a new list of certified candidates, Ms. Yost decided to fill the SEA 05H4 vacancy as a GS-801-13 as a "cert lead in training" and then convert the vacancy into a GS-801-13/14.

28.     All other SEA 05H4 Certification Lead positions at that time were at least GS-801-13/14.

29.     Ms. Yost planned on using the Management Identification of Candidates (MIC) as the method to transition a GS-13 candidate to a GS-13/14 position.

30.     Upon information and belief, MIC is a common practice and not unduly burdensome to the agency.

31.     In or around April 2015, Agency employee Mr. Brian Miller reached out to Ms. Moore-Davis to discuss an opportunity as with SEA 05H4.

32.     Ms. Moore-Davis never saw or applied to a job posting for a General Engineer position with SEA05H4.

33.     Ms. Moore-Davis was offered and accepted the General Engineer position with SEA 05H4.

34.     Upon information and belief, the job filled by Ms. Moore-Davis was never announced or posted in accordance with relevant agency policy.

35.     Upon information and belief, Ms. Yost never changed the hiring certificate for the position filled by Ms. Moore-Davis, a violation of relevant agency policy.

36.     Ms. Moore-Davis reported to work on or around September 21, 2015 and remains in that position.

37.     By or before December 31, 2016, Ms. Moore-Davis satisfactorily completed all mandatory Certification Lead training.

38.     Ms. Yost, nor any other person in Ms. Moore-Davis's chain of command, converted Ms. Moore-Davis's position the GS-801-13/14 as originally designed.

39.     Ms. Moore-Davis continues to work as a Certification Lead.  This work involves ensuring that Navy ships are ready for use by certifying that all the systems are working.

40.     Currently, there are four (4) Certification Leads in SEA 05H.

41.    Each Certification Lead is responsible for different classes of ships, but all Certification Leads perform the same work: they execute the same processes under the same policy in accordance with the same standard operating procedure.

42.    Each Certification Lead may be called on to perform work on another Certification Lead's ships.  For instance, Ms. Moore-Davis performed another Certification Lead's work when the other employee was out of the office for an extended period for a medical issue in late 2016.

43.    Each Certification Lead performs equal work.

44.    All Certification Leads other than Ms. Moore-Davis are paid at the higher GS-14 pay band.

45.    Ms. Moore-Davis is the only African American female Certification Lead.

46.    From on or around September 21, 2015, through to the present day, Ms. Yost has been Plaintiff's second-level supervisor.

47.    From on or around March 1, 2016, through to the present, Roderick Wester has served as Ms. Moore-Davis's first-level supervisor.

48.    In or around 2016, the Agency converted a number of its positions, including Plaintiff's, from the General Schedule pay scale to the Department of Defense Civilian Acquisition Workforce Personnel Demonstration Project ("Acq Demo") pay scale.

49.    Upon information and belief, Ms. Moore-Davis's position was not correctly converted to its original pay band at the time the AcqDemo pay scale went into effect.

50.    Under the AcqDemo, GS-13 employees, including Ms. Moore-Davis, were reclassified as NH-3 employees.

51.    Under the AcqDemo system, GS-14 employees including the other Certification Leads were reclassified as NH-4 employees.

52.    NH-4 employees receive a higher salary than NH-3 employees.

6

Unequal Pay and Gender Discrimination

53.     Ms. Moore-Davis was placed in SEA 05H4 to fill a position previously held by a male GS-14 engineer, hereinafter referred to as "NN."[1]

54.     Ms. Moore-Davis works for the same employer that NN worked for.

55.     Ms. Moore-Davis works in the same physical location that NN worked in.

56.     Ms. Moore-Davis was responsible for the same core duties as NN was responsible for.

57.     Ms. Moore-Davis also took on the same collateral duties that NN had performed.

58.     Ms. Moore-Davis's position required the same degree of accountability and responsibility as NN's position.

59.     Ms. Moore-Davis's position required the same amount of physical or mental exertion as NN's position.

60.     Ms. Moore-Davis's position substantially required the same level of experience, training education, and ability as NN's position.

61.     The Certification Lead position required the same level of skill, effort, and responsibility when the position was held by NN as it does now that the position is held by Ms. Moore-Davis.

62.     Thus, Ms. Moore-Davis performs substantially equal work as NN performed while in that position.

63.     As NN was classified as a GS-14 (NH-4) and Ms. Moore-Davis is classified as a GS-13 (NH-3), NN received more pay than Ms. Moore-Davis for equal work.

64.     Further, there have been other male Certification Leads while Ms. Moore-Davis has held that position, one of which hereinafter referred to as "ST."

---

[1] Comparators' names have been redacted for the purposes of this Complaint.  On information and belief, the Agency knows the identity of NN and the other comparators, all of whom handle classified information.  Plaintiff will provide the court with any and all available information on anonymized personnel once this Court has ruled on a Protective Order.

65.     Ms. Moore-Davis's position requires the same degree of accountability and responsibility as these other male Certification Leads' positions.

66.     Ms. Moore-Davis's position requires the same amount of physical or mental exertion as these other male Certification Leads' positions.

67.     Ms. Moore-Davis's position substantially requires the same level of experience, training education, and ability as these other male Certification Leads' positions.

68.     Ms. Moore-Davis's Certification Lead position substantially requires the same level of skill, effort, and responsibility as these other male Certification Leads' positions.

69.     Ms. Yost, while reviewing Ms. Moore-Davis's candidacy for her current position, acknowledged the position's pay band was GS-13/14 (NH-3/4) but continues to keep Ms. Moore-Davis in a GS-13 (NH-3) position.

70.     As all other Certification Leads are paid in the GS-14/NH-4 pay band, Ms. Moore-Davis received a lower salary than all other male Certification Leads.

71.     Thus, Ms. Moore-Davis performs equal work as these other male Certification Leads for unequal pay.

<u>Discrimination, Retaliation & Harassment</u>

72.     On or around March 1, 2016, Mr. Wester became Ms. Moore-Davis's first-level supervisor.

73.     Ms. Moore-Davis observed that Mr. Wester treated African American female employees, including herself, differently than other employees.  For example, he spoke to non-minority employees with greater respect; his tone and body language were more hostile when addressing African American and female employees; he gave male employees greater latitude with their work schedule.

74.     The primary focus of Mr. Wester's hostility focused upon Ms. Moore-Davis's pay, project management style, and telework requests.  Consequently, Ms. Moore-Davis tried to shield herself from Mr. Wester's hostility by bringing contractors and/or support staff to meetings with Mr. Wester.

*2016*

75.     Ms. Moore-Davis entered into a valid telework agreement with the Agency in or around July 2016.

76.     On or around August 25, 2016, Mr. Wester denied Ms. Moore-Davis's telework that was requested to adjust her commute to attend parent teacher conferences, as she is a single mother.

77.     Upon information and belief, Ms. Moore-Davis was treated less favorably than male and/or white employees in regard to telework.

78.     Ms. Moore-Davis began questioning her position's pay band classification in November 2016 while performing work on behalf of a Certification Lead out on medical leave.

79.     In December 2016, Mr. Wester refused to authorize her reimbursement for travel expenses for a two-week seminar.

80.     Upon information and belief, Ms. Moore-Davis was treated less favorably than male and/or white employees in regard to travel reimbursement.

*2017*

81.     In January 2017, Ms. Moore-Davis's daughter was ill, and the daughter's doctor wrote a letter of medical necessity stating that the daughter needed to be supervised by Ms. Moore-Davis.

82.     On or around January 17, 2017, Ms. Moore-Davis requested telework so that she could supervise her daughter per the doctor's orders.

83.     Ms. Moore-Davis made clear in her communication with the Agency that her daughter did not need full time dependent care, merely supervision, and that her daughter's condition would not impact her ability to complete her work.

84.     Mr. Wester delayed approval of the telework, allegedly because of formalities in how Ms. Moore-Davis submitted her request, and ultimately denied a portion of the leave the daughter's doctor determined was medically necessary.

85.     On January 24, 2017, Mr. Wester monitored and scrutinized her work more stringently than other employees, requesting excessive telework documentation.

86.     On January 25, 2017, Ms. Moore-Davis engaged in protected activity by complaining to Vice Admiral Moore[2] about harassment and discrimination in the monitoring and supervision of her telework.

87.     Mr. Wester and Ms. Yost were aware of Ms. Moore-Davis's complaint to Vice Admiral Moore on or around January 25, 2017.

88.     On or around January 30, 2017, Ms. Moore-Davis received her FY16 performance review, in which Mr. Wester rated her as a negative 3 delta; this rating prevented Ms. Moore-Davis from receiving a salary increase.

89.     Upon information and belief, the true reason for Ms. Moore-Davis's negative annual appraisal was her Title VII protected characteristics.

90.     Upon information and belief, Ms. Moore-Davis was held to the same standards as the other Certification Leads receiving GS-14/NH-4 salaries despite being paid at less at the GS-13/NH-3 salary.

---

[2] Ms. Moore-Davis is not related to Vice Admiral Moore.

91.     Upon information and belief, all African American females under Mr. Wester's supervision received negative delta scores on their FY16 performance reviews.

92.     Upon information and belief, Mr. Wester's supervisees that were either not female or not African American received higher delta scores.

93.     Ms. Moore-Davis complained about being held to the standards of an NH-4 employee while being paid as an NH-3 employee; no action was taken.

94.     Ms. Yost was aware Ms. Moore-Davis's position was designed to have a pay band of NH-3/4 but did not make any effort to convert the position back to the correct pay scale after Ms. Moore-Davis completed her Certification Lead training.

95.     On or around February 14, 2017, Mr. Wester denied Ms. Moore-Davis additional telework to supervise her ill daughter.

96.     Upon information and belief, Ms. Moore-Davis was treated less favorably than employees who were not African American single mothers in matters of telework to supervise ill family.

97.     On or around February 21, 2017, Mr. Wester threatened to assign Ms. Moore-Davis additional duties.

98.     Ms. Moore-Davis then initiated contact with the EEO office on February 23, 2017.

99.     Ms. Moore-Davis's supervisors became aware of her EEO Informal Complaint on or around February 28, 2017.

100.    On or around March 27, 2017, Mr. Wester and Ms. Yost denied her regular and recurring telework for two days a week.

101.    Ms. Moore-Davis complained to Ms. Shelly Yost, who took no action.

102.    Upon information and belief, Ms. Moore-Davis was treated less favorably than employees who were not African American single mothers in matters of regular and recurring telework.

103.    On May 17, 2017, without advance notice, Mr. Wester met with Ms. Moore-Davis to give her an oral pop quiz on technical specifications of ships.

104.    Upon information and belief, Mr. Wester did not administer a similar pop quiz to the other male Certification Leads supervised by Mr. Wester.

105.    On June 9, 2017, Mr. Wester gave Ms. Moore-Davis a negative mid-year performance evaluation on the basis of the pop quiz he had administered in May and the fact that she relied on contractors and other support staff.

106.    Upon information and belief, other employees supervised by Mr. Wester also rely on contractors and other support staff without any objection from Mr. Wester.

107.    On or around June 9, 2017, Mr. Wester refused to allow Ms. Moore-Davis to update her fiscal year 2017 contribution plan, whereas other employees were allowed to do so.

108.    On October 26, 2017, Mr. Wester cancelled Ms. Moore-Davis's "gliding schedule," an alternative work schedule that allowed her a degree of flexibility in her daily start and stop times while maintaining core business hours.

109.    Ms. Moore-Davis complained to Ms. Shelly Yost, who took no action.

110.    Upon information and belief, Ms. Moore-Davis's preferred alternative work schedule was the only one disallowed.

111.    Upon information and belief, Ms. Moore-Davis was treated less favorably than male or white employees regarding alternative work schedules.

*2019*

112.    In 2019, SEA 05H was reorganized, leaving Ms. Moore-Davis as the only African American female employee under Mr. Wester's supervision.

113.    On or around January 29, 2019, Mr. Wester once again began requesting excessive telework documentation.

114.    When Ms. Moore-Davis complained about the excessive telework documentation, she was issued a Letter of Caution on or around February 13, 2019.

*2020*

115.    On April 10, 2020, the Agency issued the Final Agency Decision dismissing Ms. Moore-Davis's First Formal Complaint.

116.    On April 29, 2020, Mr. Wester issued Ms. Moore-Davis a Reprimand.

117.    This Reprimand was issued on the basis of discrimination rather than legitimate concerns for the efficiency of the Agency.

118.    Ms. Moore-Davis was reprimanded for holding collaboration meetings outside of a timeline set in a draft policy, despite doing so out of concern for meeting deadlines during the COVID-19 outbreak.

119.    Upon information and belief, another employee, hereinafter referred to as "MM," also held collaboration meetings outside of the draft policy's timeline but was not reprimanded.

120.    Ms. Moore-Davis suffered a retaliatory adverse personal action and was treated less favorably than similarly situated white employees.

121.    Ms. Moore-Davis submitted a grievance on this Reprimand; however, the Agency assigned Ms. Shelly Yost, a witness and a party to the facts underlying the Reprimand, as the Deciding Official.

122.    On July 8, 2020, Ms. Yost upheld Mr. Wester's Reprimand, despite acknowledging that MM held a collaboration meeting outside the draft policy's timeline.

123.    Ms. Moore-Davis was treated less favorably than MM, a white employee.

Count 1: Equal Pay Act (29 U.S.C. § 206(d))
Unequal Pay in Violation of The Equal Pay Act

124.    Ms. Moore-Davis hereby adopts and incorporates by reference paragraphs one (1) through

123 as set forth in their entirety in this section.

125.    Ms. Moore-Davis was and is performing a common core of tasks associated with her job

that was and is substantially equal to that of her male counterparts.  Her job title, job description,

and official responsibilities were substantially equal to that of her male counterparts.

126.    The conditions in which Ms. Moore-Davis and her counterparts performed the work were

the same.

127.    Ms. Yost, prior to Ms. Moore-Davis's selection, acknowledge that Ms. Moore-Davis's

position's pay band was GS-13/14 (NH-3/4) but has kept Ms. Moore-Davis in a GS-13 (NH-3)

pay band.

128.    Ms. Yost intended to convert Ms. Moore-Davis's position to a GS-13/14 (NH-3/4) once

Ms. Moore-Davis completed her training, but Ms. Yost has failed to act despite Ms. Moore-Davis

completing all mandatory training in 2016.

129.    Ms. Moore-Davis's male counterparts were and are paid more under these circumstances

in violation of the Equal Pay Act.

130.    Ms. Moore-Davis suffered damages as a direct and proximate result of Defendant's

unlawful discriminatory actions, including past and future lost wages and benefits, and the costs

of bringing this action.

131.    Defendant willfully violated Ms. Moore-Davis's rights under the EPA, and as a result, is

liable for liquidated damages.

Count 2: Equal Pay Act (29 U.S.C. § 215(a)(3)
Retaliation in Violation of the Equal Pay Act

132.    Ms. Moore-Davis hereby adopts and incorporates by reference paragraphs one (1) through 131 as set forth in their entirety in this section.

133.    On or around November 7, 2016, Ms. Moore-Davis engaged in protected activity by complaining to Roderick Wester about Ms. Moore-Davis's unequal pay for equal work based on her sex.  Specifically, Ms. Moore-Davis inquired as to why she was hired as a GS-13 General Engineer when the Certification Lead position was historically a GS-14 position, thus automatically entitled to a higher salary.

134.    Upon information and belief, Mr. Wester was preparing Ms. Moore-Davis's performance review around the time she complained of unequal pay for equal work.

135.    Shortly thereafter, Ms. Moore-Davis received a performance review with a negative delta score.

136.    Ms. Moore-Davis complained of again of being paid less for equal work.

137.    Mr. Wester then engaged in a pattern of retaliation, including but not limited to: a negative performance appraisal, holding Ms. Moore-Davis to performance standards above her pay grade, cancelling her alternative work schedule, and both informal and formal discipline.

138.    Despite knowing that Ms. Moore-Davis's position was designed to be a GS-13/14 (NH-3/4), Ms. Yost has kept Ms. Moore-Davis in a training status for years and has not made any attempt to correct Ms. Moore-Davis's position's pay band.

139.    Defendant's alleged reasons for these events are pretextual and baseless.

140.    The true reason for these actions was retaliation against Ms. Moore-Davis because she complained on of unequal pay based on her sex.

15

141.    Ms. Moore-Davis suffered damages as a direct and proximate result of Defendant's unlawful retaliatory actions, including past and future lost wages and benefits, and the costs of bringing this action.

142.    Defendant willfully violated Ms. Moore-Davis's rights under the EPA, and as a result, is liable for liquidated damages.

Count 3: Title VII (42 U.S.C. §§ 2000e et seq.)
Pay Discrimination in Violation of Title VII of the Civil Rights Act of 1964

143.    Ms. Moore-Davis hereby adopts and incorporates by reference paragraphs one (1) through 142 as set forth in their entirety in this section.

144.    Ms. Moore-Davis is an African American female.

145.    Ms. Moore-Davis is qualified for her position.

146.    The Agency, through its supervisor, Ms. Yost, recognized and understood that Ms. Moore-Davis's position pay band was GS-13/14 (NH-3/4) but placed Ms. Moore-Davis in training at a limited pay band of GS-13 (NH-3).

147.    Despite completing all mandatory training, the Agency has made no attempt to convert Ms. Moore-Davis's pay band to its original band.

148.    Agency discriminated against Ms. Moore-Davis by paying her lower wages than her male counterparts.

149.    Agency discriminated against Ms. Moore-Davis by paying her lower wages than her white counterparts.

150.    Agency paid Ms. Moore-Davis lower wages because of her gender and/or race.

151.    Ms. Moore-Davis suffered damages as a direct and proximate result of Defendant's unlawful discriminatory actions, including past and future lost wages and benefits, the costs of bringing this action.

Count 4: Title VII (42 U.S.C. §§ 2000e et seq.)
Discrimination in Violation of Title VII of the Civil Rights Act of 1964

152.    Ms. Moore-Davis hereby adopts and incorporates by reference paragraphs one (1) through 151 as set forth in their entirety in this section.

153.    Ms. Moore-Davis is an African American female.

154.    Ms. Moore-Davis is qualified for her position.

155.    Agency took adverse employment actions against Ms. Moore Davis, including, but not limited to: negative performance appraisal, holding Ms. Moore-Davis to performance standards above her pay grade, delays and denials of telework required to supervise her daughter, requiring telework formalities in excess of those required by law, cancelling her gliding schedule, and other related acts that occurred after the administrative investigation period.

156.    In each of these adverse employment actions, Ms. Moore-Davis was treated less favorably than similarly situated colleagues.

157.    Agency knew or should have known about these acts of discrimination.

158.    Agency's rationale for these actions is merely pretext.

159.    Ms. Moore-Davis suffered damages as a direct and proximate result of Agency's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

Count 5: Title VII (42 U.S.C. §§ 2000e et seq.)
Retaliation in Violation of Title VII of the Civil Rights Act of 1964

160.    Ms. Moore-Davis hereby adopts and incorporates by reference paragraphs one (1) through 159 as set forth in their entirety in this section.

161.    On or around January 25, 2017, Ms. Moore-Davis engaged in protected activity by complaining to Vice Admiral Moore about discriminatory treatment.

17

162.    Approximately two weeks after this complaint, Supervisor Wester denied Ms. Moore-Davis telework necessary to supervise her daughter.

163.    Ms. Moore-Davis engaged in additional protected activity by initiating the EEO informal complaint process on February 23, 2017.

164.    Mr. Wester engaged in additional retaliatory acts, including, but not limited to: negative performance appraisal, holding Ms. Moore-Davis to performance standards above her pay grade, delays and denials of telework required to supervise her daughter, requiring telework formalities in excess of those required by law, cancelling her gliding schedule, and other related acts that occurred after the administrative investigation period.

165.    Agency knew or should have known about these acts of discrimination.

166.    Agency's alleged reasons for taking these actions are merely pretext.

167.    Ms. Moore-Davis suffered damages as a direct and proximate result of Agency's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

Count 6: Title VII (42 U.S.C. §§ 2000e et seq.)<br>Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964

168.    Ms. Moore-Davis hereby adopts and incorporates by reference paragraphs one (1) through 167 as set forth in their entirety in this section.

169.    Ms. Moore-Davis was and continues to be subjected to antagonistic, hostile, and unwelcome conduct, including, but not limited to: negative performance appraisals, holding Ms. Moore-Davis to performance standards above her pay grade, delays in approving telework required to supervise her daughter, denials of telework required to supervise her daughter, requiring telework formalities in excess of those required by law, cancelling her gliding schedule, subjecting

her to oral pop quizzes, and other related acts that occurred after the administrative investigation period.

170.    The harassment occurred because Ms. Moore-Davis was an African American single mother.

171.    In the alternative, the harassment occurred because Ms. Moore-Davis complained of discrimination starting on January 25, 2017.

172.    The harassment had the purpose or effect of unreasonably interfering with Ms. Moore-Davis's performance.

173.    The harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment.

174.    The harassment also created an intimidating, hostile work environment.

175.    Agency knew or should have known about the harassment but allowed it to continue.

176.    Ms. Moore-Davis suffered damages as a direct and proximate result of Agency's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

**Prayer for Relief**

WHEREFORE, Plaintiff, Ms. Moore-Davis, requests judgment as follows:

a.  Award Ms. Moore-Davis for her past and future loss of wages and benefits, plus interest;

b.  Order Defendant to reclassify Ms. Moore-Davis's position as NH-4 position and/or award her front pay with benefits;

c.  Award to Ms. Moore-Davis liquidated damages incurred in connection with this action, equal to the sum amount of backpay and interest;

d.  Award to Plaintiff compensatory damages according to proof at trial;

e.  Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action; and

f.  Grant Ms. Moore-Davis such additional or alternative relief as the Court deems just and proper.

### Demand for Jury Trial

Plaintiff respectfully requests a trial by jury on all claims stated herein which by law may be tried to a jury, pursuant to the Constitution and Statutes of the United States, including but not limited to 42 U.S.C. §1981a.

Respectfully Submitted,

/s/ Theresa Taing

Theresa Taing, Esq., Bar No. 1032321
Kelly Burchell, Esq., Bar No. 495116
BURCHELL & HUGHES, PLLC
1900 M Street Northwest, Suite 600
Washington, DC 20036
D: (202) 810-3896
F: (202) 315-3807
Theresa@BurchellHughes.com